UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
JAMES H. BRADY,                                                   :
                                                                  :
                                    Plaintiff,                    :
                                                                  :
                                                                  :              21-cv-3482 (LJL)
                 -v-                                              :
                                                                  :              OPINION AND ORDER
                                                                  :
NYP HOLDINGS, INC. d/b/a THE NEW YORK POST                        :
and KATHIANNE BONIELLO,                                           :
                                                                  :
                                    Defendants.                   :
                                                                  :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants NYP Holdings, Inc. d/b/a the New York Post ("NY Post") and Kathianne

Boniello ("Boniello," and collectively with NY Post, "Defendants") move, pursuant to Federal

Rule of Civil Procedure 12(b)(6), for an order dismissing the complaint with prejudice for failure

to state a claim for relief.  Dkt. No. 17.

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

The Court accepts as true the well-pleaded allegations of the complaint ("Complaint" or

"Compl."), Dkt. No. 1, along with the documents which are incorporated by reference or of

which the Court may take judicial notice.  *See Gray v. Wesco Aircraft Holdings, Inc*., 454 F.

Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).

This case is one of a large number of litigations in this Court and elsewhere involving

plaintiff James H. Brady ("Plaintiff" or "Brady").  Brady is a defendant in a case in this Court

captioned *Sheindlin v. Brady*, 21-cv-1124 (S.D.N.Y.).  The *Sheindlin* action was brought by

plaintiff Gregory Sheindlin ("Sheindlin") who alleges that Brady defamed him in connection

with statements Brady made about yet another litigation in this Court captioned *Brady v. Sheindlin*, 20-cv-7047 (S.D.N.Y.).  In that case, Brady brought claims for common fraud, unjust enrichment, "prima facie tort," mail and wire fraud, RICO violations, and conspiracy against rights against Sheindlin and his law firm.  Plaintiff alleged that Sheindlin and his firm engaged in malfeasance in connection with a New York State court real estate action, which led to judgment being wrongfully entered against Brady.  *See Brady v. Sheindlin*, 2021 WL 737458, at *1 (S.D.N.Y. Feb. 25, 2021).  Sheindlin is an attorney and the son of television personality "Judge Judy" Sheindlin.  Compl. ¶ 48.

## I.    *Sheindlin v. Brady*

*Sheindlin v. Brady* was filed on February 8, 2021.  Sheindlin alleged that after two New York state real estate related litigations did not end in Brady's favor, "Brady embarked on an unlawful campaign in the state and federal courts to impugn the motivations and integrity of judicial officials, adversaries and their attorneys, including Sheindlin, who were involved with the adverse state-court decisions."  *Sheindlin v. Brady*, 21-cv-1124 (S.D.N.Y.), ECF No. 1 at 2. The *Sheindlin* complaint stated: "the mendacity of Brady's statements has already been adjudicated by numerous court decisions containing factual findings, repeated warnings, sanctions, and injunctions prohibiting Brady from commencing any more actions relating to his losses in the state-court adjudications."  *Id.*  After reciting the facts of the state court actions decided against Brady, the complaint listed the "litany of vexatious and harassing legal actions where [Brady] impugned the motivations and integrity of anyone involved with the adverse state-court decisions" and the findings against Brady in each of those actions, *id.* ¶ 18:

- *Brady v. Berman*, 18-cv-8459 (S.D.N.Y.).  Brady sued the United States Attorney for the Southern District of New York, alleging that crimes were committed against him by the United States Attorney, New York State Supreme Court Justice Shirley Kornreich, New York State Supreme Court Justice Barry Ostrager, New York State First Department Judges Peter Tom, Barbara Kapnick, Richard Andrias, and Troy Webber, and the New York State Court of Appeals.  In dismissing the action for lack of standing to sue and based on the filing injunction issued in *Brady v. Goldman*, 2017 WL 496083, at *2 (S.D.N.Y. Feb. 3, 2017), Judge Valerie Caproni described Brady as a "serial litigant." Compl. ¶¶ 19–23.

- *Brady v. Ostrager*, 19-cv-7122 (S.D.N.Y.).  Brady alleged that Justice Ostrager retaliated against him and colluded with the Appellate Division to engage in improper action. Judge Schofield dismissed the action based on judicial immunity and the Rooker–Feldman doctrine.  Compl. ¶¶ 24–26.

- *Brady v. IGS*, 19-cv-10142 (S.D.N.Y.).  Brady sued IGS Realty Co., LP ("IGS"), his commercial landlord, alleging civil rights violations.  Sheindlin represented IGS. Magistrate Judge Wang issued a report and recommendation that defendant's motion to dismiss should be granted and that the court should convene a hearing to determine whether to issue a filing injunction against Brady.  Judge Wang found that Brady was a "serial litigator" and noted Brady had "dragg[ed] more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance," that Brady had been warned by the court against further vexatious litigation, and that Brady had filed the action despite that warning.  Judge Engelmayer adopted Judge Wang's statement of facts in the report and recommendation as accurate, ordered Brady's action dismissed with prejudice based on the Rooker-Feldman doctrine, res judicata, and collateral estoppel, and issued a filing injunction.  Judge Engelmayer concluded that Brady had "continued to file vexatious, harassing litigation against the parties [to the state court actions]" and that there was "a disturbing trend in which Brady drags parties into court whose only apparent wrong had been to represent his adversaries in litigation." Compl. ¶¶ 27–34.

- *Brady v. Sheindlin*, 20-cv-7047 (S.D.N.Y.).  This is the action that spurred the *Sheindlin* lawsuit.  Brady accused Sheindlin of engaging in a criminal fraudulent act in connection with the state court real estate related litigations.  At the time of the *Sheindlin* lawsuit, as reflected in that complaint, Sheindlin's motion to dismiss was still pending.[1]

After reciting Plaintiff's pattern of vexatious and harassing litigation, the *Sheindlin*

complaint identified Brady's extrajudicial comments that Sheindlin claimed were defamatory per

se:

---

[1] The motion to dismiss was later granted.  *See Brady v. Sheindlin*, 2021 WL 737458, at *1 (S.D.N.Y. Feb. 25, 2021), *aff'd*, 2021 WL 5312995 (2d Cir. Nov. 16, 2021).

- Three videos posted to the YouTube internet site each entitled: "Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2015." Compl. ¶ 43.

- Five replies that Brady posted to the YouTube content stating that Sheindlin should "serve a long prison sentence and lose his law license so he can never inflict fraud schemes again," that Sheindlin was "a psychopath" and a "totally corrupt piece of shit who stole over 1.7 million from me through a fraudulent scheme," that Sheindlin was corrupt and a "lowlife" who was "going to be fried," and that Sheindlin had committed bribery. *Id.* ¶ 45.

- A Craigslist advertisement that "purported to seek a litigation attorney to represent him in *Brady v. Sheindlin*" in which he stated that he had proof that "Sheindlin used false instruments in a fraud scheme to collect over 1.7 million dollars on a personal guaranty for his client on September 5, 2018." *Id.* ¶¶ 82–84. The ad further stated that the case had not been publicized since "it is being suppressed for this politically connected man." *Id.* ¶ 84. The ad then noted that "there are three under cover videos of Sheindlin from September 5, 2018 as he was stealing the money that can be seen on YouTube if you type in the name Gregory Sheindlin." *Id.*

- An email that Brady sent to forty-four people in which he wrote "Lock him up!!" and attached a letter sent to the court accusing Sheindlin of being a thief who stole over $1.7 million dollars. *Id.* ¶ 51.

## II.     Plaintiff's Allegations in the Instant Action

In this case, Brady does not sue Sheindlin or any of the others involved in any of the prior litigation described above. He sues the NY Post and Boniello, a reporter for the NY Post. His lawsuit grows out of an online news story the NY Post published on April 3, 2021, that was written by Bonello. The news article is entitled "Judge Judy's son Gregory Sheindlin sues court gadfly for 'defamatory' videos." Compl. ¶ 48.

On February 12, 2021, Boniello sent an email to Brady. *Id.* ¶ 28. Boniello identified herself as a reporter with the NY Post who was seeking a "comment in regard to the defamation lawsuit filed against you by Gregory Sheindlin." *Id.* Boniello asked for a response to what she described as the allegations against Brady: "Court records show you've repeatedly brought the same claims in various courts but consistently lost. Mr. Sheindlin says the YouTube videos and Craigslist ads you've posted are simply defamatory and untrue." *Id.* Brady responded later that

4

day that his claims were not false and that "Sheindlin did exactly what I said he did in the YouTube videos." *Id.*  He attached letters he had sent to the Court in the *Sheindlin* matter, seeking permission "to file criminal charges," and invited Boniello to attend oral argument in the *Brady v. Sheindlin* matter that afternoon.  *Id.*  In response to Boniello's question asking what criminal charges he would be seeking, Brady accused Sheindlin of stealing over $1.7 million from him.  *Id.*

The NY Post published Boniello's story online on April 3, 2021.  *Id.* ¶ 48.  A full copy of the news story is attached as an Appendix to this Opinion in the form it was presented in the Complaint.  In brief, the news article stated that Brady, "[a] gadfly who clogs courts with 'vexatious' claims is on a scorched-earth campaign against Judge Judy's son," had "filed so many repetitive lawsuits he's been ordered to stop and sanctioned in both state and federal courts," that he was "now being sued for defamation," that "[c]ourt records show he's accused a 'dizzying array of defendants' – judges, the Manhattan District Attorney, federal prosecutors, and lawyers who have either repped him or beaten him in court – of corruption and fraud," that "[a]pparently unable to accept a unanimous jury verdict against him in [his state case], Brady has spent years lashing out," that he was engaged "in a bid to bring down Sheindlin with defamatory claims," and that "Brady has also begged judges, to no avail, to allow him to file 'criminal' charges against Sheindlin – though the specific accusations are unclear."  *Id.*  The news article included Brady's response:  "Brady insisted to The Post he's telling the truth.  'My claims are not false.  Sheindlin did exactly what I said he did in the YouTube videos,' he wrote in an email."  *Id.*  The article contained a picture of Sheindlin, noting that he began his career as a prosecutor in Manhattan.

In his lawsuit, Brady alleges that the news article is false and defamatory.  He asserts that the news article was part of a coordinated disinformation campaign by the NY Post, Boniello, Sheindlin, and Sheindlin's attorney Michael Sussman to prejudice the federal jury pool in the *Sheindlin* case.  Compl. ¶¶ 3–4, 8.  Brady alleges that "Boniello made over 18 completely false claims in [the] news story and refused to retract a single item after being asked to do so in a letter to her, dated April 6, 2021." *Id.* ¶ 8.  On that basis, he brings claims for defamation and libel, false light invasion of privacy, respondeat superior, and intentional infliction of emotional distress. *Id.* ¶ 41.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on April 20, 2021.  Dkt. No. 1.  On May 13, 2021, the Court scheduled an initial pretrial conference for May 27, 2021.  Dkt. No. 10.  The next day, Defendants informed the Court that they planned to move to dismiss the Complaint and to stay discovery pending resolution of that motion and requested an extension of time to submit a proposed Case Management Plan and Scheduling Order until after their motion was decided. Dkt. No. 11.  Plaintiff opposed Defendants' request.  Dkt. Nos. 11, 13.  The Court cancelled the initial pretrial conference, stating that it would be rescheduled after a decision on Defendants' anticipated motion to stay and to dismiss.  Dkt. Nos. 14–15.

On June 1, 2021, Defendants filed their motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), and to stay discovery, pursuant to Federal Rule of Civil Procedure 26(c).  Dkt. No. 17.  Plaintiff filed his opposition to Defendant's motion on June 17, 2021.  Dkt. No. 21.  Defendants filed their reply on July 1, 2021.  Dkt. No. 23.

## LEGAL STANDARD

On a 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff.  *See*

*York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002).  This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  The ultimate question is whether "[a] claim has facial plausibility, [i.e.] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx v. Siracusano*, 563 U.S. 27, 46 (2011).

Brady is proceeding pro se in this matter, and his Complaint is to be "generously and liberally construed." *Kadosh v. TRW, Inc.*, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).  However, a pro se plaintiff is nevertheless required to satisfy the same pleading requirements as a plaintiff proceeding with the aid of counsel.  A pro se plaintiff's "[b]ald assertions and conclusions of law are not adequate to withstand a motion to dismiss." *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 524–25 (S.D.N.Y. 2013) (quoting *Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010)).  Furthermore, a court "cannot invent factual allegations that [the pro se plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

**DISCUSSION**

Defendants move to dismiss on multiple grounds including that: (1) Plaintiff's Complaint fails to state a claim for defamation; (2) Plaintiff's duplicative claim for intentional infliction of emotional distress fails as a matter of law; (3) Plaintiff's "false light" and "respondeat superior" claims are not cognizable under New York law; and (4) the Complaint was violative of Judge Engelmayer's filing injunction.  The Court will address each of these arguments in turn.

I.      **Defendants' Motion to Dismiss for Failure to State a Claim for Relief**

Defendants argue that the Complaint fails to state a defamation claim because (1) the news article is absolutely privileged as a fair and true report of the *Sheindlin* pleading; (2) the statement that Plaintiff was a "gadfly" is classic rhetorical hyperbole that cannot give rise to a libel claim; and (3) Plaintiff has failed to plead special damages.  Defendants also argue that Plaintiff's claims for intentional infliction of emotional distress, "false light," and "respondeat superior" similarly fail as a matter of law.

A.      **Defamation**

1.      **The News Article Is Protected by the Fair Report Privilege**

Section 74 of the Civil Rights Law of New York provides:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

N.Y. Civ. Rights Law § 74.

The statute is intended to protect reports of public proceedings which are deemed to be made in the public interest.  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012). "The privilege afforded by this statute is absolute 'and is not defeated by the presence of malice

or bad faith.'"  *Gillings v. New York Post*, 87 N.Y.S.3d 220, 223 (2d Dep't 2018) (quoting

*Glendora v. Gannett Suburban Newspapers*, 608 N.Y.S.2d 239, 240 (2d Dep't 1994).

"For a report to be characterized as 'fair and true' within the meaning of the statute, thus

immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the

article be substantially accurate." *Holy Spirit Assn. for Unification of World Christianity v. New

York Times Co.*, 399 N.E.2d 1185, 1187 (N.Y. 1979).  Moreover, "the language [of the report is]

not [to] be dissected and analyzed with a lexicographer's precision.  This is so because a

newspaper article is, by its very nature, a condensed report of events which must, of necessity,

reflect to some degree the subjective viewpoint of its author." *Id.*  "A statement comes within

the privilege and 'is deemed a fair and true report if it is substantially accurate, that is if, despite

minor inaccuracies, it does not produce a different effect on a reader than would a report

containing the precise truth.'" *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021)

(quoting *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017)).

"New York courts 'adopt a liberal interpretation of the fair and true report standard of

[Section] 74 so as to provide broad protection to news accounts of judicial proceedings.'"

*Kinsey*, 991 F.3d at 179 (alteration in original) (quoting *Friedman*, 884 F.3d at 93).  "There is no

obligation for a report to tell all sides of a story to be substantially accurate." *Zappin v. NYP

Holdings, Inc.*, 2018 WL 1474414, at *8 (S.D.N.Y. Mar. 26, 2018), *aff'd*, 769 F. App'x 5 (2d

Cir. 2019); *see also Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 596 (2d Dep't 2009) ("[T]here

was no requirement that the publication report the plaintiff's side of the controversy.").  In

addition, "once it is established that the publication is reporting on a judicial proceeding, 'how a

reporter gathers his [or her] information concerning a judicial proceeding is immaterial provided

his [or her] story is a fair and substantially accurate portrayal of the events in question.'"

*Cholowsky*, 887 N.Y.S.2d at 596 (second alteration in original) (quoting *Binder v. Triangle Publications, Inc.*, 275 A.2d 53, 58 (Pa. 1971)); *see also Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 521 (S.D.N.Y. 2013); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 478 (S.D.N.Y. 2012). Filings in court are a "judicial proceeding" for purposes of Section 74.  *See, e.g.*, *Napoli v. New York Post*, 107 N.Y.S.3d 279, 281 (1st Dep't 2019) ("The allegedly defamatory statements appearing in various news articles essentially summarize or restate the allegations in judicial filings in a case related to plaintiff, so they are protected by Civil Rights Law § 74."); *McRedmond v Sutton Place Rest. & Bar, Inc.*, 851 N.Y.S.2d 478, 479 (1st Dep't 2008); *Lacher v. Engel*, 817 N.Y.S.2d 37, 43 (1st Dep't 2006) ("Comments that essentially summarize or restate the allegations of a pleading filed in an action . . . fall within § 74's privilege.").

Here, the news article is absolutely privileged under Section 74.  On its face, the news article is a report of a judicial proceeding.  The headline refers directly to the legal proceeding: "Judge Judy's son Gregory Sheindlin sues court gadfly for 'defamatory' statements."  Compl. ¶ 48.  The reporter does not purport to be making an investigation of her own into whether Brady actually made defamatory statements.  Each of the statements then contained in the news article is a "substantially accurate" rendition both of the complaint in the *Sheindlin* matter and of the court proceedings.  Boniello reports that Brady has filed repetitive lawsuits, has been ordered to stop, and has been sanctioned in both state and federal courts.  Each of those comments corresponds to an allegation in the *Sheindlin* complaint.  The news article also reports that "[c]ourt records" show he has accused a "dizzying array of defendants" of corruption and fraud including judges, the Manhattan District Attorney, federal prosecutors, and lawyers who have either represented him or beaten him in court.  *Id.*  Once again, the statement is a factual report both of the content of the *Sheindlin* complaint and of the court records to which the *Sheindlin*

complaint refers.  Finally, the report that the lawsuit accuses Sheindlin of defamation, that it is part of a "scorched earth" campaign against Sheindlin, that Brady had asked judges to allow him to file criminal charges against Sheindlin, and that Brady lost his lawsuit against IGS Realty after a unanimous jury sided against him are also substantially accurate renditions of the *Sheindlin* complaint.  Indeed, though not required to by law, the news article cites Brady's "side of the story"—that he contends his claims are "not false."  *Id.*  The news article essentially summarizes the allegations of the pleading; it does not produce a different effect on the reader than the *Sheindlin* complaint.

Brady surmises that Boniello "colluded with Gregory Sheindlin and his attorney" on the news article.  *Id.* at 17 ¶ 45.[2]  He does not allege facts to support the allegation.  It appears to be based on the fact that Boniello reported the lawsuit filed by Sheindlin without also reporting the details of the numerous lawsuits Brady has filed against others and all of the assertions made in those lawsuits.[3]  But Boniello was not required to report on Brady's allegations of fraud and corruption in the state court real-estate related matters.  Her story was the filing of the lawsuit against Sheindlin—"Judge Judy's son."  It was a fair report of that lawsuit.  In any event, even if Boniello had been passed a copy of the complaint by Sheindlin (which the facts of Brady's Complaint do not establish), that would not prevent Boniello from reporting on Sheindlin's complaint or deprive her fair and accurate report of the benefit of the absolute privilege accorded it by New York law.  *See Gillings*, 87 N.Y.S.3d at 223; *Cholowsky*, 887 N.Y.S.2d at 596.

---

[2] For clarity, the Court has cited to page and paragraph numbers in the Complaint where the paragraph numbers appear more than once.
[3] Brady also makes the frivolous suggestion that Boniello colluded with Sheindlin because the article contains a screenshot photograph of Sheindlin that appears to be from a webpage that has his telephone number.  Dkt. No. 21 at 7.

Brady also argues that certain of the accusations in the *Sheindlin* complaint are not true, that they are "totally false." Dkt. No. 21 at 13. He claims that there was no jury interrogatory that addressed the question of personal guarantees and that a deposition establishes that. But the *Sheindlin* complaint states that the jury returned a unanimous verdict against Brady and the NY Post reporter was permitted to report on that allegation without making an independent investigation. *See Cholowsky*, 887 N.Y.S.2d at 596 ("[O]nce it is established that the publication is reporting on a judicial proceeding, how a reporter gathers his information concerning a judicial proceeding is immaterial provided his story is a fair and substantially accurate portrayal of the events in question." (internal quotation marks omitted)). There also is nothing untrue about the statement. The record of the state court proceedings demonstrates that the jury returned a unanimous verdict against Brady.

Finally, Brady argues that he did not post the YouTube videos to "lash out" at Sheindlin and that he, not Sheindlin, was the true "victim." Dkt. No. 21 at 17. None of that permits Brady to sue Boniello or the NY Post. It is irrelevant whether Brady "lashed out" because he was the victim of a "corrupt" process in state court or—as numerous judges have now publicly concluded—because after a full and fair trial, the jury happened to side against him. Boniello and the NY Post were permitted to report on the *Sheindlin* allegations without taking Brady's side of the story.

### 2.     The Term "Gadfly"

The news article refers to Brady as a "gadfly" in two places—its headline and in the first sentence in which it calls Brady a gadfly who clogs courts with vexatious claims. Compl. ¶ 48. The Complaint alleges that the news article defames Brady by referring to him as a "gadfly." Brady defines a gadfly as a "person who stimulates or annoys other people especially by persistent criticism." Compl. at 10 ¶ 39. According to Brady, "[c]ommon synonyms for

'gadfly,' include: irritant, annoyance, pest, prod, obnoxious." *Id.* at 11 ¶ 40.  Based on these allegations, Plaintiff fails to state a claim for two separate reasons.

First, "only factual statements are actionable as defamation or libel. . . . New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'" *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014).  New York courts consider three factors in determining whether a reasonable reader would consider a statement to be one of fact or nonactionable opinion: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listers that what is being read or heard is likely to be opinion, not fact." *Davis v. Boeheim*, 22 N.E.3d 999, 1005 (N.Y. 2014) (quoting *Mann v. Abel*, 885 N.E.2d 884, 886 (N.Y. 2008).

Considering those three factors, the Court concludes that the news article's use of the term "gadfly" to refer to Brady may be categorized as opinion.  *See Chau*, 771 F.3d at 129 (holding that terms "sucker," "fool," "frontman," "industrial waste," "pilot . . . of the ship of doom," and "crooks or morons" were hyperbole and nonactionable opinion).  Although it is possible that "someone may not appreciate being called a [gadfly], it is an expression of one's view of another, and moreover might not reflect reality." *Id.*  Annoyance is, to some extent, in the eye of the beholder.  Someone's irritant might be viewed as another's crusader.  It does not reflect a fact but a non-verifiable view.

However, the conclusion that "gadfly" is a statement of opinion "is not necessarily the end of the analysis." *Id.*  "New York courts . . . distinguish between statements of 'pure opinion' and statements of 'mixed opinion.'" *Conti v. Doe*, 535 F. Supp. 3d 257, 267 (S.D.N.Y. 2021)

13

(quoting *Davis*, 24 N.Y.3d at 269). A statement of "pure opinion" "is either 'accompanied by a recitation of the facts on which it is based or . . . does not imply the existence of undisclosed underlying facts.'" *Rapaport v. Barstool Sports, Inc.*, 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021) (quoting *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1168 (N.Y. 1993)). It is not actionable. *Id.* "This requirement that the facts upon which the opinion is based are known 'ensure[s] that the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw [the reader's] own conclusions concerning its validity.'" *Davis*, 24 N.Y.3d at 269 (alteration in original) (quoting *Silsdorf v. Levine*, 449 N.E.2d 716, 719 (N.Y. 1983)).[4]

The news article's use of the term gadfly does not imply "the allegation of undisclosed defamatory facts." Restatement (Second) of Torts § 566. The basis for Boniello's assertion that Brady is a gadfly who clogs courts with "vexatious" claims is stated in the news article—his repeated lawsuits against anyone who had an involvement in his state court real estate related litigation. Compl. ¶ 48. It is those lawsuits that constitute the "persistent criticism," *id.* at 10 ¶ 39, and it is the allegation of the *Sheindlin* complaint that Brady has filed a "litany of vexatious and harassing legal actions where [Brady] impugned the motivations and integrity of anyone involved with the adverse state-court decisions" that supports the notion that he is an annoyance, *Sheindlin*, 21-cv-1124 (S.D.N.Y.), ECF No. 1 ¶ 18. There is no implication that the author has some additional undisclosed facts supporting the conclusion. Everything is stated for the readers to consider and to form their own conclusions.

---

[4] The First Amendment also protects a reporter's use "of rhetorical hyperbole and unfalsifiable opinion" against a claim for defamation. *See Adelson v. Harris*, 774 F.3d 803, 807 (2d Cir. 2014); *see also Milkovitch v. Lorain Journal Co.*, 497 U.S. 1, 16–17 (1990); *Greenbelt Publ. Assn v. Bresler*, 398 U.S. 6, 12, 14 (1970); *Gross*, 623 N.E.2d at 1167–68.

14

Second, the headline itself is not independently actionable.  "New York common law also recognizes a separate 'fair index' privilege, whereby a headline is not actionable 'so long as it is a "fair index of the article with which it appears."'"  *Kesner v. Dow Jones & Co., Inc.*, 2021 WL 256949, at *12 (S.D.N.Y. Jan. 26, 2021) (quoting *Cummings v. City of New York*, 2020 WL 882335, at *21 (S.D.N.Y. Feb. 24, 2020) (quoting *Mondello v. Newsday, Inc.*, 774 N.Y.S.2d 794, 794 (2d Dep't 2004))).  "A publication 'need not choose the most delicate word available in constructing its headline; it is permitted some drama in grabbing its reader's attention, so long as the headline remains a fair index of what is accurately reported below.'"  *Kesner*, 2021 WL 256949, at *12 (quoting *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.* 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009)).  "In order to determine whether the headline of a concededly truthful article is actionable as a libel, the court must initially determine whether the headline was a fair index of the article with which it appears; if it was, then the headline is not actionable." *Mondello v. Newsday, Inc.*, 774 N.Y.S.2d 794, 794 (2d Dep't 2004).

The use of the word "gadfly" is a fair index of the news article itself and thus is not independently defamatory.  The news article itself lays out Brady's history of suing a dizzying array of defendants in response to the unanimous jury verdict against him to the point where he has been ordered to stop and sanctioned in multiple courts.  Even absent the use of the word "gadfly," in the text a reasonable reader would understand that the article's allegations—which, in turn, are based on the *Sheindlin* complaint—to refer to someone who is a gadfly.

* * *

For these reasons, Plaintiff's defamation claim is dismissed.[5]

---

[5] Because the Court dismisses Plaintiff's defamation claim on other grounds, the Court need not address Defendants' argument regarding special damages.

### B.    False Light Invasion of Privacy

Plaintiff alleges that Defendants committed the tort of false light invasion of privacy by engaging in a "coordinated disinformation campaign" to "have Sheindlin look like the victim of Brady when in truth Brady was a victim of Sheindlin's fraud scheme against Brady."  Compl. ¶ 100.  The claim is based on the conclusory assertion that the news article "goes well beyond the scope of reporting on [the] lawsuit."  *Id.* ¶ 105.

There is no tort of false light invasion of privacy under New York law and, accordingly, this claim is dismissed.  *Triano v. Gannett Satellite Information Network, Inc.*, 2010 WL 3932334, at *4 (S.D.N.Y. Sept. 29, 2010).

### C.    Respondeat Superior

Plaintiff purports to assert a separate claim against the NY Post for respondeat superior based on the news article.  Compl. ¶¶ 108–114.

Respondeat superior is a basis upon which an employer, such as the NY Post, can be held liable for an employee's torts.  It is not an independent claim for relief under New York common law.  *Doe v. Sarah Lawrence College*, 453 F. Supp. 3d 653, 670 (S.D.N.Y. 2020).

The Court already has determined that Plaintiff's defamation allegations do not state a claim for relief.  Plaintiff's allegations of respondeat superior add nothing to those deficient allegations.  This claim is also dismissed.

### D.    Intentional Infliction of Emotional Distress

Plaintiff's fourth and final claim is for the New York tort intentional infliction of emotional distress.  It is based on the same allegations as the defamation claim.  Compl. ¶¶ 115– 119.  "New York courts have consistently held that a plaintiff may not maintain a separate claim for intentional infliction of emotional distress grounded in the same facts as a claim for libel." *Triano*, 2010 WL 3932334, at *6 (quoting *Idema v. Wager*, 120 F. Supp. 2d 361, 370 (S.D.N.Y.

2000)); *see also Hirschfeld v. Daily News, L.P.*, 703 N.Y.S.2d 123, 124 (1st Dep't 2000)

("[C]laims of emotional distress were properly dismissed, [when] they f[e]ll within the ambit of

other traditional tort liability which . . . is reflected in plaintiff's cause[] of action sounding in

defamation." (internal quotation marks omitted)).  "New York law considers claims sounding in

tort to be defamation claims . . . where those causes of action seek damages only for injury to

reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his

reputation."  *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012)

(summary order) (alteration in original).  This claim is therefore also dismissed.

## II.    Violation of the Filing Injunction

Defendants also ask the Court to dismiss Plaintiff's action as violative of Judge

Engelmayer's filing injunction.   That injunction reads as follows:

> James H. Brady is hereby enjoined from filing any new action in the Southern
> District of New York that relates in any way to the IGS Lease Agreements, the
> Personal Guarantees associated therewith, or Brady's businesses' occupation of
> space in IGS-owned buildings, including any actions concerning the conduct of any
> attorney, judicial officer, government official, or other third party in relation to the
> IGS Lease Agreements, or any collateral actions arising from those agreements.
> This injunction does not bar Brady from appealing any decision in this case.
> However, it should be read broadly to bar the filing, without leave of this Court, of
> *any* case against *any* defendant that has as its factual predicate the validity or
> invalidity of the IGS Lease Agreements, Personal Guarantees, other agreements
> with IGS Realty, or any legal actions that have arisen from those transactions.

*Brady v. IGS Realty Co. L.P.*, 2020 WL 6049649, at *5 (S.D.N.Y. Oct. 13, 2020).
!

It is worth reiterating the findings that underscored and justified that injunction:

- Brady was "already subject to one filing injunction in this District, imposed by Judge
  Daniels for conduct similar to that here.  Judge Daniels focused on Brady's having filed a
  series of collateral attacks on adverse state-court decisions in which he, as here,
  'impugn[ed] the motivations and integrity of all the actors involved.'" *Id.* at *3
  (alteration in original) (quoting *Brady v. Goldman,* 2017 WL 496083, at *2 (S.D.N.Y.
  Feb. 3, 2017), *aff'd*, 714 F. App'x 63 (2d Cir. 2018)).

- "More recently, in 2019, Brady separately sued Justice Ostrager in this District, challenging his conduct in, and the outcome of, *IGS Realty I.* Judge Schofield dismissed that action . . . and noted that '[Brady] is warned that further vexatious or frivolous litigation in this Court will result in an order barring [Brady] from filing any new action in this Court without prior permission.'" *Id.* (alterations in original) (quoting *Brady v. Ostrager*, 19-cv-7122 (S.D.N.Y.), ECF No. 6 at 5).

- "[I]n August 2020 – after Judge Wang recommended the dismissal of Brady's claims without leave to replead, and after she order Brady to show cause why she should not recommend the imposition of a filing injunction – Brady filed yet *another* action concerning the IGS Lease Agreements. . . . [H]e has continued to file vexatious, harassing litigation against the parties to these actions.  [The lawsuit] confirms a disturbing trend in which Brady drags parties into court hose only apparent wrong had been to represent his adversaries in litigation." *Id.* at *3.

- "Brady also has been sanctioned in New York State court for 'dragg[ing] more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance.' . . . Justice Shirley W. Kornreich found that Brady's actions were 'a near perfect example of frivolous conduct.'" *Id.* at *4 (alteration in original) (quoting *Brady v. 450 W. 31st St. Owners Corp.*, Index No. 157779/2013 (N.Y. Sup. Ct.), Dkt. No. 174 at 22).

- "The instant actions, and those Brady has continued to file in this District, therefore represent the latest chapters in a long line of vexatious, harassing, and duplicative lawsuits." *Id.*

- "Brady has, during the last several years, filed scores of meritless actions in state and federal court." *Id.*

- "[T]he *Safir* factors overwhelmingly favor the imposition of a filing injunction." *Id.* at *3.

The language of the Complaint in this action confirms that it falls within the scope of Judge Engelmayer's filing injunction against actions that "relat[e] in any way to the IGS Lease Agreements, the Personal Guarantees associated therewith, or Brady's businesses' occupation of space in IGS-owned buildings, including any actions concerning the conduct of any . . . third party in relation to the IGS Lease Agreements, or any collateral actions arising from those agreements." *Id.* at *5.  Although ostensibly directed at Boniello and the NY Post and the news article, the thrust of the Complaint—as with Brady's prior complaints—is to relitigate the facts and conclusions of the New York real-estate related litigation.  Its subject is the New York state

litigation over the IGS Lease Agreements and the Personal Guarantees and its target is Sheindlin. It alleges that the news article was false and defamatory because "it was actually Brady that [sic] was victimized by Sheindlin and his criminal fraud scheme that forced the sale of Brady's family business Studio 450 and stole over $1.7 million from Brady on September 5, 2018," Compl. ¶ 15, and that "Boniello and the New York Post know that James Brady and his wife were forced to sell their family business Studio 450 and have their livelihoods destroyed to pay IGS Realty over $1.7 million on September 5, 2018, based on a fraud scheme masterminded by Gregory Sheindlin and his scofflaw client Philippe Ifrah from IGS Realty yet none of these true facts are in the story," *id.* ¶ 29.  *See also id.* ¶¶ 43, 45, 55–57.  It thus constitutes a case "that has as its factual predicate the validity or invalidity of the IGS Lease Agreements, Personal Guarantees, other agreements with IGS Realty, or any legal actions that have arisen from those transactions." *IGS Realty Co. L.P.*, 2020 WL 6049649, at *5.

Brady's sole response is that "the filing injunction does not permit the New York Post to collude in a smear campaign against Brady."  Dkt. No. 21 at 21.  But that argument misses the point.  The filing injunction did not permit the NY Post to engage in defamation nor did it prevent Brady from obtaining judicial relief had he had a basis to claim that the NY Post engaged in defamation, as Judge Engelmayer acknowledged in his order in response to Brady's letter seeking leave to file this case.  *See* Dkt. No. 19-2 at 3 (finding that "Mr. Brady does not need the Court's permission to file [the action described]").  However, the allegations here are not consistent with those described by Brady in his letter to Judge Engelmayer, *id.* at 1–2, and do in fact violate the injunction.  The Complaint is dismissed for that additional reason.  *See Brady v. Berman,* 2019 WL 4534421, at *2 (partially dismissing Brady's complaint as violative of

Judge Daniels's 2017 injunction in *Brady v. Goldman* applying to "all parts of Plaintiff's claims that relate to the Air Rights Litigation").

## III.     Violation of New York's Anti-SLAPP Statute

In their motion to dismiss, Defendants ask that the Court make a finding that the action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law," N.Y. Civ. Rights Law § 70-a(1)(a), so as to entitle Defendants to a mandatory fee award.  Dkt. No. 18 at 17.  The statute was recently amended in 2020 to make an award under § 70-a(1)(a) mandatory if conditions are satisfied and expand the types of claims covered by the statute.  *See Sweigert v. Goodman*, 2021 WL 1578097 (S.D.N.Y. April 22, 2021).

The Second Circuit has set forth the relevant standards to determine whether a provision of an anti-SLAPP statute applies in federal court:  "The test is whether a Federal Rule of Civil Procedure answers the same question as the [provision at issue].  If so, the Federal Rule governs, unless it violates the Rules Enabling Act."  *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) (internal quotation marks and citations omitted).

The provision at issue here addresses the same question as Rule 11 of the Federal Rules of Civil Procedure.  Like the anti-SLAPP provision, Rule 11 addresses sanctions for filings in federal court.  But the anti-SLAPP provision differs from Rule 11 in several respects.  The anti-SLAPP provision provides for sanctions in a broader range of cases than Rule 11 and is intended to deter more lawsuits.  Rule 11 is addressed to "claims, defenses, and other legal contentions [that] are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11.  The anti-SLAPP provision is triggered on a showing that a covered action "was commenced or continued without a *substantial* basis in fact and law and could not be supported by a *substantial* argument

for the extension, modification or reversal of existing law."  N.Y. Civ. Rights Law § 70-a(1)(a) (emphases added).  The procedural mechanisms under the anti-SLAPP law differ from those under Rule 11.  Rule 11 permits a court to impose sanctions only after the adverse party has been given "notice and a reasonable opportunity to respond."  Fed. R. Civ. P. 11(c).  It thus is intended to give the nonmoving party "the opportunity to withdraw or correct the challenged paper without adverse consequences" and, "[i]f corrective action is taken, the question of sanctions becomes moot."  5A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1337.2 (4th ed. 2021).  The anti-SLAPP provision has no such requirement.  A party may seek sanctions without providing any advance notice to the adverse party.  Finally, under Rule 11, sanctions are permissive.  *See* Fed. R. Civ. P. 11(c)(1) ("[T]he court *may* impose an appropriate sanction . . . ." (emphasis added)); 5A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1332 (4th ed. 2021) (noting the most recent 1993 amendment to Rule 11 "left the decision-making power in the district court's hands").  Under the anti-SLAPP provision, as Defendants emphasize, sanctions are mandatory.

Defendants do not and cannot argue that Rule 11 violates the Rules Enabling Act.  Thus, Rule 11—and not the anti-SLAPP provision—would govern any application by Defendants for sanctions, and Defendants' motion under N.Y. Civil Rights Law § 70-a(1)(a) must be denied.

**CONCLUSION**

Defendants' motion to dismiss the Complaint with prejudice is GRANTED both because it fails to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and because it violates the filing injunction.[6]  The motion for sanctions under N.Y. Civil Rights Law § 70-a(1)(a) is denied.  Neither Defendants nor Plaintiff address the sanctions that the Court should impose for violation of the filing injunction.  Defendants shall have one week from the date of this Opinion and Order to make a motion for sanctions for violation of the filing injunction.  Plaintiff will have two weeks thereafter to respond.

The Clerk of Court is respectfully directed to close Dkt. No. 17.


SO ORDERED.


Dated: March 31, 2022
       New York, New York                    _____
                                                LEWIS J. LIMAN
                                             United States District Judge

---

[6] Plaintiff objects to Defendants' motion to stay discovery.  Dkt. No. 21 at 15; Dkt. No. 28; Dkt. No. 29.  Although the Court did not decide the motion to stay discovery prior to this decision, the issue is now moot because the Court has granted Defendant's motion to dismiss.

APPENDIX

48.     The online news story is shown below in its entirety:

# Judge Judy's son Gregory Sheindlin sues court gadfly for 'defamatory' videos

By Kathianne Boniello

April 3, 2021 | 6:46pm | Updated



James H. Brady has accused Gregory Sheindlin, Judge Judy's son, of "stealing" his life savings on YouTube videos and Craigslist ads. YouTube

A gadfly who clogs courts with "vexatious" claims is on a scorched-earth campaign against Judge Judy's son.

James H. Brady, who has filed so many repetitive lawsuits he's been ordered to stop and sanctioned in both state and federal courts, is now being sued for defamation and libel after posting multiple YouTube videos and Craigslist ads accusing attorney Gregory Sheindlin of "stealing" his life savings.

Sheindlin, whose father Jerry married "Judge Judy" Sheindlin in 1977, says his only crime was representing a Manhattan commercial landlord in an ultimately victorious years-long rent battle with Brady.

Apparently unable to accept a unanimous jury verdict against him in that case, Brady has spent years lashing out.

Court records show he's accused a "dizzying array of defendants" — judges, the Manhattan District Attorney, federal prosecutors, and lawyers who have either repped him or beaten him in court — of corruption and fraud.

Unable to find satisfaction in the courts, Brady has now turned to YouTube and Craigslist in a bid to bring down Sheindlin with defamatory claims, Sheindlin charges in a Manhattan Federal Court lawsuit against the New Jersey man, whom he describes as "a vindictive, disgruntled, serial litigant."

The trio of YouTube clips show Sheindlin on the phone and talking to others in an office, but Brady insists in blaring titles that the footage reveals, "Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars."

Brady has also advertised on Craigslist for a lawyer to take on his case, including one post with blurry shots of Sheindlin and the headline, "Get these photos of Judge Judy's son stealing in press win $$$."

Brady has also begged judges, to no avail, to allow him to file "criminal" charges against Sheindlin — though the specific accusations are unclear.

Brady was accused in 2009 of failing to pay the rent on three floors he leased for a meeting hall and catering businesses at 336 W. 37th St. After a long court battle, a unanimous jury sided with landlord IGS Realty, records show.

## Gregory Sheindlin

**Location:**
New York, NY
**Phone:**
(212) 256-9729
**Email:**

Email me



In 1989, Gregory Sheindlin began his career as a prosecutor in Manhattan. He worked in the Trial Division prosecuting violent and white collar crimes and later in the

The unpaid rent, ballooning attorney fees and interest eventually swelled to a more than $1.7 million judgment as Brady dragged out proceedings, repeatedly suing, and failing, to overturn the verdict. Sheindlin had been hired by IGS to help settle the judgment.

"Despite Brady's full and fair opportunity to litigate his legal rights at every level of the New York State judicial system, he would commence a litany of vexatious and harassing legal actions where he impugned the motivations and integrity of anyone involved with the adverse state court decisions," Sheindlin said in his lawsuit.

Sheindlin wants a court order forcing Brady to remove the YouTube videos and barring him from making any more.

"Mr. Brady lost and continues to act as if our system of justice applies to everyone but him," said Sheindlin's lawyer, Michael Sussman.

Brady insisted to The Post he's telling the truth.

"My claims are not false. Sheindlin did exactly what I said he did in the YouTube videos," he wrote in an email.

**FILED UNDER** <u>CRAIGSLIST</u> , <u>DEFAMATION</u> , <u>JUDGE JUDY</u> , <u>LANDLORD-TENANT DISPUTES</u> , <u>LAWSUITS</u> , <u>4/3/21</u>